**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF WISCONSIN**
**MILWAUKEE DIVISION**

| | |
|---|---|
| KEVIN DUNN, Individually and on Behalf of All Others Similarly Situated, ) )<br><br>Plaintiffs, )<br>v. )<br><br>OPTIMUM OUTCOMES INC., )<br><br>Defendant. ) | Case No.: 18-cv-369<br><br>**CLASS ACTION COMPLAINT**<br><br><br>**Jury Trial Demanded** |

## INTRODUCTION

1.     This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (the "FDCPA") and the Wisconsin Consumer Act, Chs. 421-427, Wis. Stats. (the "WCA").

## JURISDICTION AND VENUE

2.     The court has jurisdiction to grant the relief sought by the Plaintiffs pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1337, and 1367.  Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3.     Plaintiff Kevin Dunn is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4.     Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from him debts allegedly incurred for personal, family or household purposes.

5.     Each Plaintiff is also a "customer" as defined in the WCA, Wis. Stat. § 421.301(17), in that the alleged debt allegedly arose from a consumer transaction that included agreements to defer payment.

6.     Defendant Optimum Outcomes, Inc. ("OOI") is a foreign business corporation with its principal offices located at 2651 Warrenville Road, Suite 500, Downers Grove, Illinois 60515.

7.     OOI is engaged in the business of a collection agency, using the mails and telephone to collect defaulted consumer debts.

8.     OOI is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes.

9.     OOI is licensed as a "Collection Agency" under Wis. Stat. § 218.04 and Wis. Admin. Code Ch. DFI-Bkg. 74.

10.     OOI is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103(3).

## FACTS

### December 3, 2017 Letter

11.     On or about December 3, 2017, OOI mailed a debt collection letter to Plaintiff regarding an alleged debt.  A copy of this letter is attached to this complaint as Exhibit A.

12.     Upon information and belief, the alleged debt referenced in Exhibit A was incurred for personal, family, or household purposes, namely medical services.

13.     Plaintiff was not required to pay for the medical services at the time services were rendered.  Instead, the creditor, or a billing agent, mailed a bill several days or weeks after the dates of service.  Thus, payment was deferred by agreement.  *See Tylke v. Advanced Pain Mgmt.,*

2

*S.C.*, Case No. 14cv5354 (Milwaukee Co. Cir. Ct., Dec. 11, 2014) ("Any time a merchant sends a bill for goods or services after a consumer transaction has taken place, there is an 'agreement to defer payment.'"); *see also, e.g., Kelly v. Montgomery Lynch & Assocs.*, 2008 U.S. Dist. LEXIS 30917, at * 9-10 (N.D. Ohio Apr. 15, 2008) ("The debt at issue in this case involves financial expenses incurred . . . in exchange for medical services . . . . Pursuant to this debt, the Plaintiff was offered the right to receive medical services and to defer payment on those financial obligations. This is a classic transaction out of which debts arise under the FDCPA.").

14.    Upon information and belief, Exhibit A is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

15.    Upon information and belief, Exhibit A is a form debt collection letter, used by OOI to attempt to collect alleged debts.

16.    Upon information and belief, Exhibit A was the first written communication Plaintiff received from OOI regarding the alleged debt referenced in Exhibit A.

17.    Exhibit A contains the statutory debt validation notice that the FDCPA, 15 U.S.C. § 1692g, requires the debt collector mail the alleged debtor along with, or within five days of, the initial communication:

```
Please read the following information.  This is an attempt to collect a debt by a debt
collector.  Any information obtained will be used for that purpose.  Unless you notify this
office within thirty (30) days after receiving this notice that you dispute the validity
of the debt, or any portion thereof, this office will assume this debt is valid.  If you
notify this office in writing within thirty (30) days from receiving this notice that you
dispute the validity of the debt or any portion thereof, this office will obtain
verification of the debt or obtain a copy of a judgment and will mail you a copy of such
judgment or verification.  If you request this office in writing within thirty (30) days
after receiving this notice, this office will provide you with the name and address of the
original creditor, if different from the current creditor.  The address to send
correspondence is PO Box 58015, Raleigh, NC 27658.
```

Exhibit A.

18.    On its face, Exhibit A fails to state the name of the creditor to whom the debt is owed in a non-confusing manner.

19.    Exhibit A contains the following:

3

Froedtert Hospital has turned your account over to us, Optimum Outcomes, Inc., for collection. We request that you pay this debt, and if you do not pay this debt collections activity will continue. Our records indicate that your account balance on the following accounts for services rendered to you on the listed date of service.

Exhibit A.

20.     Exhibit A states that "Froedtert Hospital has turned your account over to us, Optimum Outcomes, Inc. for collection."

21.     Aside from stating that "Froedtert Hospital has turned your account over to us," Exhibit A does not reference "Froedtert Hospital."

22.     Exhibit A provides specific account information in three places, wherein Exhibit A alternates between stating the "Debtor #" and the "Reference #," but does not reference the name of the creditor to whom the debt is owed:



```
Debtor #        9463
Reference #        7855
Date of Service 9/26/2016

Account         DOS   Balance
      7855     9/26/2016  $470.20
```



| Statement Date | Account Number | Amount Due | Amount Paid |
|---|---|---|---|
| 12/3/2017 | 9463 | $470.20 | $ |
| PLEASE CHARGE MY! | ☐ VISA ☐ ☐ ☐ ☐ | | |
| CARD NUMBER | | CVV | |
| SIGNATURE | | EXP DATE | |

Exhibit A.

23.     The representation that the account has been "turned over" is vague, confusing, and misleading to the unsophisticated consumer.

24.     Statements that an account has been "turned over," "transferred," or "assigned" are inherently open-ended and confusing to the unsophisticated consumer, who would be unable to determine whether an account that has been "turned over for collection" has actually been sold

4

to a third party creditor, or has been assigned for collection purposes, only. *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 321 (7th Cir. 2016) ("the word 'transferred' could mean either conveyance of title or assignment for collection"); *see also, e.g.,* 15 U.S.C. § 1692e(12) (prohibiting "the false representation or implication that accounts have been *turned over* to innocent purchasers for value.") (emphasis added).

25.     The confusion is exacerbated because the statutory validation notice implies that the debt may have been sold. *See* 15 U.S.C. § 1692g(a)(5) ("If you request this office in writing within thirty (30) days after receiving this notice, this office will provide you with the name address of the original creditor, if different from the current creditor.").

26.     The unsophisticated consumer would be unable to determine whether OOI actually purchased the debt for value or had been assigned the account for collection purposes, only.

27.     <u>Exhibit A</u> also contains the following:

```
Please call our office at 877-795-9819 to charge your balance to either your check card,
MasterCard or Visa account, or if you need additional information before payment is
submitted.
```

<u>Exhibit A</u>.

28.     The instruction in <u>Exhibit A</u> that the consumer should "Please call our office at 877-795-9819 . . . if you need additional information before payment is submitted," is deceptive, misleading, and confusing to the unsophisticated consumer.

29.     The instruction to "call our office . . . if you need additional information before payment is submitted," contradicts, overshadows, and confuses the debt validation notice stated in <u>Exhibit A</u>, and encourages the consumer to forego her dispute rights by communicating disputes orally rather than in writing:

15 U.S.C. §§ 1692g(a)(4) and 1692g(a)(5) state:

(a) Notice of debt; contents

Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—

…

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector;

(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

30.     To trigger the rights to verification of the debt and the name and address of the original creditor, the debtor must provide the debt collector with written disputes.  15 U.S.C. §§ 1692g(a)(4) and 1692g(a)(5); *see McCabe v. Crawford & Co.*, 272 F. Supp. 2d 736, 743 (N.D. Ill. July 8, 2003) ("If the debtor gives only *oral* notification of the dispute, the FDCPA imposes no requirement on the debt collector to obtain verification of the debt.") (citing *Fasten v. Zager*, 49 F. Supp. 2d 144, 149 (E.D.N.Y. May 20, 1999)).

31.     Upon receiving a *written* dispute from the consumer within the 30-day debt validation period, the FDCPA requires the debt collector to contact the creditor and obtain verification of the debt and the name and address of the original creditor before conducting any further collection efforts. 15 U.S.C. § 1692g(b):

(b) Disputed debts

If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the

6

original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. Collection activities and communications that do not otherwise violate this subchapter may continue during the 30-day period referred to in subsection (a) unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor. Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

32.     Congress adopted a specific FDCPA dispute procedure in 15 U.S.C. § 1692g "to eliminate the recurring problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid." *Majeski v. I.C. Sys.*, 2010 U.S. Dist. LEXIS 1830, at *22 n.6 (quoting *Swanson v. Southern Oregon Credit Serv., Inc.*, 869 F.2d 1222, 1225 (9th Cir. 1988).

33.     <u>Exhibit A</u> confusingly and misleadingly directs the debtor to "call our office . . . if you need additional information before payment is submitted" by telephone without informing the consumer that these requests must be communicated in writing in order to trigger verification. Such a request for "additional information," for example a request for verification of the debt or the chain of title, necessarily incorporates issues that qualify as "disputes."

34.     Courts throughout the country have found that a debt collector overshadows the debtor's statutory validation rights by directing consumers to dispute their debts by telephone. *See Osborn v. Ekpsz, LLC*, 821 F.Supp.2d 859, 868, 870 (S.D. Tex. Sept. 26, 2011) (collecting cases and concluding that "[e]very district court to consider the issue has held that a debt collector violates §1692g(a) by failing to inform consumers that requests under subsections(a)(4) and (a)(5) must be made in writing."); *see also, McCabe v. Crawford & Co.*, 272 F. Supp. 2d 736, 743-44 (N.D. Ill. July 8, 2003) (omitting the words "in writing" from the validation notice

conflicted with and overshadowed the consumer's statutory right to trigger verification); *Chandler v. Eichel*, 2017 U.S. Dist. LEXIS 156168, at *9 (S.D. Ind. Sept. 25, 2017); *Crafton v. Law Firm of Levine*, 957 F.Supp.2d 992, 998 (E.D. Wis. July 9, 2013); *Bicking v. Law Offices of Rubenstein & Cogan*, 783 F.Supp.2d 841, 845 (E.D. Va. May 5, 2011); *Welker v. Law Office of Daniel J. Horowitz*, 699 F.Supp.2d 1164, 1170 (S.D. Cal. 2010); *Beasley v. Sessoms & Rogers, P.A.*, 2010 U.S. Dist. LEXIS 52010 (E.D. N.C. Mar. 1, 2010); *Nero v. Law Office of Sam Streeter, P.L.L.C.*, 655 F.Supp.2d 200, 206 (E.D.N.Y. Sept. 10, 2009); *Chan v. N. Am. Collectors, Inc.*, 2006 U.S. Dist. LEXIS 13353, at *16 (N.D. Cal. Mar. 24, 2006); *Grief v. Wilson, Elser, Moskowitz, Edelman & Dicker, LLP*, 217 F.Supp.2d 336, 340 (E.D.N.Y. Aug. 19, 2002); *Carroll v. United Compucred Collections*, 2002 U.S. Dist. LEXIS 25032, at *28 (M.D. Tenn. Nov. 15 2002); *Woolfolk v. Van Ru Credit Corp.*, 783 F. Supp. 724, 726 (D. Conn. Oct. 2, 1990); *Caprio v. Healthcare Revenue Recovery Group, LLC*, 709 F.3d 142, 151-152 (3d Cir. 2013); *Rhoades v. West Virginia Credit Bureau Reporting Servs.*, 96 F. Supp. 2d 528, (S.D. W. Va. May 10, 2000); *O'Chaney v. Shapiro & Kreisman, LLC*, U.S. Dist. LEXIS 5116, at *12-13 (Mar. 25, 2004); *Flowers v. Accelerated Bureau of Collections*, 1997 U.S. Dist. LEXIS 3354, at *18-19 (N.D. Ill. Mar. 13, 1997).

35.     OOI's instruction in <u>Exhibit A</u> that the consumer may communicate requests for "additional information" by telephone rather than in writing contradicts and overshadows the statements that the debt collector will respond to written disputes.

36.     The instruction that the consumer may communicate her dispute by telephone would confuse and mislead consumers who wish to dispute debts to believe that a debtor who disputes her debt orally is entitled to the same protections as if she had communicated her dispute in writing, when she is not so entitled.  *See Camacho v. Bridgeport Fin., Inc.*, 430 F.3d 1078, 1082 (9th Cir. 2005).

37.     The debt collector cannot cure the confusion by informing debtors who communicate disputes by telephone that they may preserve their statutory rights by submitting a written dispute. *E.g.*, *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, LLC*, 214 F.3d 872, 875 (7th Cir. 2000) ("to authorize debt collectors to comply orally would be just an invitation to the sort of fraudulent and coercive tactics in debt collection that the Act aimed (rightly or wrongly) to put an end to.").

38.     The overshadowing effect is compounded because, although the instruction in Exhibit A that the consumer should "call our office . . . if you need additional information" is offset and easily read, the validation notice is in a large block of text:

```
Please call our office at 877-795-9819 to charge your balance to either your check card,
MasterCard or Visa account, or if you need additional information before payment is
submitted.

Please read the following information.  This is an attempt to collect a debt by a debt
collector.  Any information obtained will be used for that purpose. Unless you notify this
office within thirty (30) days after receiving this notice that you dispute the validity
of the debt, or any portion thereof, this office will assume this debt is valid.  If you
notify this office in writing within thirty (30) days from receiving this notice that you
dispute the validity of the debt or any portion thereof, this office will obtain
verification of the debt or obtain a copy of a judgment and will mail you a copy of such
judgment or verification.  If you request this office in writing within thirty (30) days
after receiving this notice, this office will provide you with the name and address of the
original creditor, if different from the current creditor.  The address to send
correspondence is PO Box 58015, Raleigh, NC 27658.
```

Exhibit A.

### *January 9, 2018 Letter*

39.     On or about January 9, 2018, OOI mailed another debt collection letter to Plaintiff regarding the same alleged debt referenced in Exhibit A.  A copy of this letter is attached to this complaint as Exhibit B.

40.     Upon information and belief, Exhibit B is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

41.     Upon information and belief, Exhibit B is a form debt collection letter, used by OOI to attempt to collect alleged debts.

42.     The body of Exhibit B contains the following:

```
We have written you previously concerning your past due account with Froedtert Hospital
for services rendered, which has been placed with us, Optimum Outcomes, Inc., for
collection.  You did not make the requested payment. We thus will continue our collection
efforts.  You can prevent this by contacting our office immediately at 877-795-9819 with
payment in full or to make satisfactory payment arrangements. You can avoid this by
mailing your payment along with a copy of this letter to our office today.
```

Exhibit B.

43.     Exhibit B states that "you can avoid [further collection efforts] by mailing your payment along with a copy of this letter to our office today."

44.     Exhibit B also contains a payment remittance slip, which contains the following:



Exhibit B.

45.     Exhibit B states that the consumer should "detach and return the bottom portion with your payment."

46.     The instruction in the body of Exhibit B that the consumer can avoid further collection efforts "by mailing your payment along with a copy of this letter" contradicts and conflicts with the instruction in the payment remittance slip in Exhibit B that the consumer should "detach and return the bottom portion with your payment."

10

47.     The unsophisticated consumer would be confused and misled as to how to tender payment, avoid further collection efforts, and ensure the account was properly credited.

48.     Moreover, <u>Exhibit B</u> states that OOI "will continue our collection efforts," and misleads the consumer to believe that the only way to "prevent" or "avoid" further collection efforts by OOI is to tender payment in full or make satisfactory payment arrangements.

49.     In fact, the consumer can require OOI to cease communication with the consumer by notifying the debt collector in writing that the consumer refuses to pay the debt or wishes the debt collector to cease further communication with the consumer.  15 U.S.C. § 1692c(c).

50.     Upon a written refusal or request that the debt collector cease communication, the debt collector must cease communication, with three exceptions:

15 U.S.C. 1692c states, in part:

1692c(c) - Ceasing communication.

> If a consumer notifies a debt collector in writing that the consumer refuses to pay the debt . . . the debt collector shall not communicate further with the consumer with respect to such debt, except---
>
>> (1) to advise the consumer that the debt collector's further efforts are being terminated.
>>
>> (2) to notify the consumer that the debt collector or creditor may invoke specified remedies which are ordinarily invoked by such debt collector or creditor; or
>>
>> (3) where applicable, to notify the consumer that the debt collector or creditor intends to invoke a specified remedy.  If such notice from the consumer is made by mail, notification shall be complete upon receipt.

51.     Although the FDCPA does not affirmatively require debt collectors to notify the consumer that he may require the debt collector to cease communication, it does prohibit the debt collector from misleading consumers about these rights.  *See, e.g., Brzezinski v. Vital Recovery Servs.*, 2006 U.S. Dist. LEXIS 51263, at *15-16 (E.D. Wis. July 12, 2006).

11

52.     OOI is an out-of-state third-party debt collector that does not have authority to sue consumers in Wisconsin.  Upon information and belief, when a consumer in Wisconsin notifies OOI in writing that the consumer refuses to pay the debt or wishes that OOI cease communication, OOI ceases its collection efforts and returns the account to the creditor.

53.     Plaintiff was confused and misled by Exhibits A and B.

54.     The unsophisticated consumer would be confused and misled by Exhibits A and B.

### *The FDCPA*

55.     The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized.  *Pogorzelski v. Patenaude & Felix APC*, No. 16-C-1330, 2017 U.S. Dist. LEXIS 89678 *9 (E.D. Wis. June 12, 2017) ("A plaintiff who receives misinformation from a debt collector has suffered the type of injury the FDCPA was intended to protect against."); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Lorang v. Ditech Fin. LLC*, 2017 U.S. Dist. LEXIS 169286, at *6 (W.D. Wis. Oct. 13, 2017) ("the weight of authority in this circuit is that a misrepresentation about a debt is a sufficient injury for standing because a primary purpose of the FDCPA is to protect consumers from receiving false and misleading information."); *Qualls v. T-H Prof'l & Med. Collections, Ltd.*, 2017 U.S. Dist. LEXIS 113037, at *8 (C.D. Ill. July 20, 2017) ("Courts in this Circuit, both before and after *Spokeo*, have rejected similar challenges to standing in FDCPA cases.") (citing "*Hayes v. Convergent Healthcare*

12

*Recoveries, Inc.*, 2016 U.S. Dist. LEXIS 139743 (C.D. Ill. 2016)); *Long v. Fenton & McGarvey Law Firm P.S.C.*, 223 F. Supp. 3d 773, 777 (S.D. Ind. Dec. 9, 2016) ("While courts have found that violations of other statutes . . . do not create concrete injuries in fact, violations of the FDCPA are distinguishable from these other statutes and have been repeatedly found to establish concrete injuries."); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,'"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

13

56.     Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

57.     15 U.S.C. § 1692c(c) states that a consumer may require debt collectors to cease communication---with certain exceptions---by notifying the debt collector that the consumer refuses to pay the debt or wishes for the debt collector to cease communication.

58.     15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

59.     15 U.S.C. § 1692e(2)(A) generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

60.     15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

61.     15 U.S.C. § 1692e(12) specifically prohibits "the false representation or implication that accounts have been turned over to innocent purchasers for value."

62.     15 U.S.C. § 1692f generally prohibits "any unfair or unconscionable means to collect or attempt to collect any debt."

63.     15 U.S.C. § 1692g states:

(a) **Notice of debt; contents**

Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following

14

information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—

(1) the amount of the debt;

(2) the name of the creditor to whom the debt is owed;

(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

(emphasis added)

64.     15 U.S.C. § 1692g(b) states, in part, that "collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor."

65.     The Seventh Circuit has held that a debt collector must disclose the debtor's rights to obtain verification in a non-confusing manner, and must ensure its representations to debtors do not contradict the validation notice. *Bartlett v. Heibl*, 128 F.3d 497, 500 (7th Cir. 1997) ("the debt collector may not defeat the statute's purpose by making the required disclosures in a form or within a context in which they are unlikely to be understood by the unsophisticated debtors who are the particular objects of the statute's solicitude.").

66.     The false statement or implication during the thirty-day validation period that a consumer may effectively communicate her dispute by telephone is a material false statement.

15

*E.g., Flowers v. Accelerated Bureau of Collections, Inc.*, 1997 U.S. Dist. LEXIS 6070, \*7-9 (N.D. Ill. Apr. 29, 1997).

### The WCA

67.     The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

68.     The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v. *Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 n.15, 596 N.W.2d 786 (1999) (citations omitted).

69.     To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.

70.     "The basic purpose of the remedies set forth in Chapter 425, Stats., is to induce compliance with the WCA and thereby promote its underlying objectives." *First Wisconsin Nat'l Bank v. Nicolaou*, 113 Wis. 2d 524, 533, 335 N.W.2d 390 (1983).  Thus, private actions under the WCA are designed to both benefit consumers whose rights have been violated and also competitors of the violators, whose competitive advantage should not be diminished because of their compliance with the law.

71.     To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stats. § 427.104.

72.     The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stats. § 422.202(1). The Act also provides

16

injured consumers with causes of action for class-wide statutory and actual damages and injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See* Wis. Stats. §§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

73. Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

74. Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly adopted and followed the "unsophisticated consumer" standard, citing and discussing *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*

75. Wis. Stat. § 427.104(1)(g) states that a debt collector may not: "Communicate with the customer . . . in such a manner as can reasonably be expected to threaten or harass the customer."

76. Wis. Stat. § 427.104(1)(h) states that a debt collector may not: "Engage in other conduct which can reasonably be expected to threaten or harass the customer . . . ."

77. The failure to effectively convey a customer's validation rights can reasonably be expected to harass the customer. *See* Wis. Admin. Code DFI-Bkg § 74.16(9) ("Oppressive and deceptive practices prohibited.") (prohibiting licensed Collection Agencies from engaging in conduct that "can reasonably be expected to threaten or harass the customer, including conduct which violates the Federal Fair Debt Collection Practices Act"); *see also Flood v. Mercantile Adjustment Bureau, LLC*, 176 P.3d 769, 776 (Colo. Jan. 22, 2008) (communicating that a

17

consumer's rights would be preserved through oral communication effectively misleads the consumer into delaying the transmission of the consumer's written request for the verifying documentation, thereby causing the loss of valuable consumer rights violated state statute forbidding harassing, abusive, misleading, and unfair debt collection practices).

## COUNT I – FDCPA

78.    Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

79.    Exhibit A fails to state the name of the creditor to whom the debt is owed in a non-confusing manner.

80.    The statement in Exhibit A that the account has been "turned over" to OOI is confusing and misleading on its face as to whether the account was actually sold or only assigned for collection purposes.

81.    The consumer would be misled to believe that the account had been sold for value.

82.    As a whole, Exhibit A is confusing on its face as to the name of the creditor to whom the debt is owed.

83.    Defendant violated 15 U.S.C. §§ 1692e, 1692e(10), 1692e(12), and 1692g(a)(2).

## COUNT II – FDCPA

84.    Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

85.    The representation in Exhibit A that the consumer may effectively communicate requests for "additional information" dispute by telephone is inconsistent with the disclosure of the consumer's rights to obtain verification of the debt and the name and address of the original creditor.

18

86.     Exhibit A misleads the consumer to believe she may effectively communicate a dispute by telephone rather than in writing.

87.     Defendant violated 15 U.S.C. §§ 1692e, 1692e(10), 1692f, 1692g(a)(4), 1692g(a)(5), and 1692g(b).

## **COUNT III – FDCPA**

88.     Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

89.     Exhibit B provides conflicting instructions to the consumer who wishes to tender payment.

90.     The body of Exhibit B instructs the consumer to mail a copy of the letter but the remittance slip in Exhibit B instructs the consumer to detach and mail the remittance slip, itself.

91.     Defendant violated 15 U.S.C. §§ 1692e and 1692e(10).

## **COUNT IV – FDCPA**

92.     Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

93.     Exhibit B implies to the unsophisticated consumer that OOI will not cease its collection efforts unless and until the consumer tenders payment in full, or makes "satisfactory payment arrangements."

94.     Upon information and belief, if Plaintiff notified OOI in writing that he refused to pay the debt or wished for OOI to cease communication, OOI would cease its collection efforts and return the account to the creditor.

95.     Defendant violated 15 U.S.C. §§ 1692c(c), 1692e, 1692e(10), and 1692f.

## COUNT V – WCA

96. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

97. Defendant is licensed as a "Collection Agency" pursuant to Wis. Stat. § 218.04 and Wis. Admin. Code Ch. DFI-Bkg. 74.

98. Exhibit A falsely implies that OOI has purchased the debt.

99. The representation in Exhibit A that the consumer may effectively communicate her dispute by telephone is inconsistent with the disclosure the consumer's rights to obtain verification of the debt and the name and address of the original creditor.

100. Exhibit A misleads the consumer to believe she may effectively communicate a dispute by telephone rather than in writing.

101. The representation in Exhibit B that OOI will continue its collection efforts unless and until the account is paid in full or satisfactory payment arrangements are made is false and deceptive, and misleads consumers to pay the debt rather than exercise their rights.

102. Defendants violated Wis. Stat. §§ 427.104(1)(g) and 427.104(1)(h).

## CLASS ALLEGATIONS

103. Plaintiff brings this action on behalf of two Classes.

104. Class I ("Nationwide Class"), consists of (a) all natural persons in the United States of America (b) to whom Defendants mailed a series of collection letters in the form of Exhibits A and B to the Complaint in this Action, (c) where the letters were attempting to collect the same debt, (d) which was incurred for personal, family or household services, (e) and where the second letter was mailed between March 8, 2017 and March 8, 2018, inclusive, (f) and neither letter was returned by the postal service.

20

105.    Class I ("Wisconsin Class"), consists of (a) all natural persons in the State of Wisconsin (b) to whom Defendants mailed a series of collection letters in the form of <u>Exhibits A and B</u> to the Complaint in this Action, (c) where the letters were attempting to collect the same debt, (d) which was incurred for personal, family or household services, (e) and where the second letter was mailed between March 8, 2017 and March 8, 2018, inclusive, (f) and neither letter was returned by the postal service.

106.    Each Class is so numerous that joinder is impracticable.  On information and belief, there are more than 50 members of each Class.

107.    There are questions of law and fact common to the members of each class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether <u>Exhibits A and B</u> violate the FDCPA and WCA.

108.    Plaintiffs' claims are typical of the claims of the members of each Class.  All are based on the same factual and legal theories.

109.    Plaintiffs will fairly and adequately represent the interests of the members of each Class.  Plaintiffs have retained counsel experienced in consumer credit and debt collection abuse cases.

110.    A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

111.    Plaintiffs hereby demand a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that the Court enter judgment in favor of Plaintiffs and the Classes and against Defendant for:

(a)     actual damages;

(b)     statutory damages;

(c)     attorneys' fees, litigation expenses and costs of suit; and

(d)     such other or further relief as the Court deems proper.

Dated:  March 8, 2018


                                        **ADEMI & O'REILLY, LLP**

                                By:     /s/ John D. Blythin
                                        John D. Blythin (SBN 1046105)
                                        Mark A. Eldridge (SBN 1089944)
                                        Jesse Fruchter (SBN 1097673)
                                        Ben J. Slatky (SBN 1106892)
                                        3620 East Layton Avenue
                                        Cudahy, WI 53110
                                        (414) 482-8000
                                        (414) 482-8001 (fax)
                                        jblythin@ademilaw.com
                                        meldridge@ademilaw.com
                                        jfruchter@ademilaw.com
                                        bslatky@ademilaw.com